(No. 1653, July 14, 1914)

STATE BANK OF COMMERCE of Clayton, N. M., Appellee, vs. THE WESTERN UNION TELE-GRAPH COMPANY, Appellant.

### SYLLABUS BY THE COURT.

1. The addressee of a telegram may maintain an action in tort, against a telegraph company, for negligently delivering a forged message to him, which he, in good faith, and without negligence, acts upon to his damage.

P. 218

2. It is not the duty of a telegraph company to investigate and satisfy itself of the identity of the person who delivers to it a message for transmission. All that is required of it is the exercise of reasonable care in the receipt and transmission thereof.          P. 219

3. In the absence of facts or circumstances which would suggest or arouse suspicion in the mind of a person of ordinary caution of false impersonation, or of want of authority, the exercise of reasonable care by a telegraph operator to receive messages from those only who have authority to send

them, does not require him to investigate the identity or authority of those who present them.

P. 220

4. The rule is, that where the plaintiff proves loss, without negligence on his part, by acting on a message delivered to him by the company as coming from, but not in fact sent by, one in whose name it is signed, he makes a PRIMA FACIE CASE, and the duty devolves upon the company of rebutting it.

P. 220

5. Where a party attempts to demur and plead to the merits at the same time and to the same pleading, he waives the demurrer.

P. 221

6. An objection to the reception of any evidence on the ground that the complaint fails to state facts sufficient to constitute a cause of action, should definitely point out wherein the complaint so fails, in order to enable the trial court to intelligently rule upon the question and to show the opposite party the point of the objection. And unless such objection is specific it will be unavailing on appeal.

P. 222

7. Where a complaint is first attacked in the appellate court, upon the ground that it does not state facts sufficient to constitute a cause of action, it will be liberally construed in order to uphold the judgment, and, if it contain allegations from which every fact necessary to maintain the action may be inferred, it will be sustained. Held, that a complaint which states facts which if proven on the trial would constitute a good prima facie case for the plaintiff, will be held sufficient to sustain the verdict, where it is not attacked until after verdict.

P. 223

8. The continuance of a cause, upon application, rests in the discretion of the trial court and will not be interfered

Bank of Commerce v. W. U. Tel. Co., 19 N. M. 211

with upon appeal unless it appears that the trial court has abused such discretion.

P. 225

9. In a civil case, where a witness resides beyond the jurisdiction of the court in which such cause is pending, a party has no right to rely upon the promise of such witness to attend the trial, but should take his deposition.

P. 225

10. Where, in a suit against a telegraph company for damage, for the negligent delivery of a forged message, the plaintiff proves the delivery by the company, and that the message was a forgery, and his damage in reliance thereon, he makes out a prima facie case, and a motion for a non-suit is properly denied.

P. 226

11. Where a party introduces incompetent evidence, he cannot complain if the trial court permits the other party to rebut the same.

P. 227

12. No alleged errors, not jurisdictional, will be considered on appeal or error, except those which are set out in the motion for a new trial.

P. 227

13. Where a plaintiff enters a remittitur as to a part of his recovery in the lower court, and there is sufficient evidence to sustain the balance of his recovery, and such balance is approved by the trial court, a judgment for such balance will not be disturbed, unless it is apparent, from the flagrant excessiveness of the verdict, that the jury was influenced by passion or prejudice.

P. 228

Appeal from District Court, Union County; Thomas D. Leib, Presiding Judge. Affirmed.

O. T. TOOMBS, HARRY E. KELLY, CHARLES H. HAINES, Attorneys for Appellant.

Does Petition State Cause of Action? L. R. 4 Q. B. 706; L. R. 3, C. P. 1; 45 Oreg. 414; Croswell on Electricity, Sec. 457; 11 Colo. App. 328; 169 Ill. 610; 107 Ia. 356; 75 Tex. 531; 57 Fed. 471; 2 Okl. 234; 154 U. S. 1; 97 Tex. 219; 141 Fed. 522; 7 Col. 499; 100 Fed. 561.

Sixteenth Error Assigned. 100 Mass. 40; 74 Ill. App. 105.

Twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh and twenty-ninth errors assigned. 22 Fed. Cas. No. 13275, p. 1030.

HUGH J. COLLINS, Clayton, N. M., Attorney for Appellee.

Petition States Cause of Action. 2 C. P. Div. 62; 5 Mont. Leg. News 87; 25 L. C. J. 248; A. & E. Enc. L., 1st Ed., Vol. 25, p. 285; pp. 825, 826, 827 Id.; 3 Sutherland on Dam. 314; 25 A. & E. Corp. Cases 559; 110 N. Y. 403; 52 Ind. 1; 11 Sawyer 28; Bigelow on Torts, 602; 21 N. E. 4; 7 Am. St. Rep. 530; 112 Mass. 90; 25 A. & E. Enc. L., 826-27; 21 N. E. 4; 5 N. M. 308; Whart. on Negligence 557; 110 N. Y. 403; 52 Ind. 1; 11 Sawyer 28; 28 L. R. A. 72; 64 L. R. A. 545; 72 S. W. 232; Allen's Telegraph Cases 455; Gray Com. by Telegram, Sec. 73; 139 N. W. 552; 24 L. R. A. 1045; 139 N. W. 552; 109 Fed. 369; 6 Am. Rep. 140; 39 N. W. 315; 57 N. W. 696.

The Pleadings. 111 Ill. 400; 35 N. E. 534; 45 N. E. 161; Vol. 14, Enc. P. & P. 337; 22 N. E. 134; 107 Ind. 442; 39 N. E. 885; 14 Enc. P & P. 337; 112 Mass. 90; 7 Col. 499; 100 Fed. 561.

Sixteenth Error Assigned. 100 Mass. 40; 74 Ill. App. 105.

Seventh Error Assigned. Sec. 180, Jones on Ev., p. 388; 65 L. R. A. 811.

Twenty-fourth, Twenty-fifth, Twenty-sixth, Twenty-seventh Errors Assigned. 18th Enc. P. & P., 134, 130.

### Reply Brief of Appellant.

Pleadings. 5 N. M. 308; 110 N. Y. 403; 52 Ind. 1; 23 Fed. 315; 21 N. E. 4; 7 Am. St. 530; 112 Mass. 90; 5 N. M. 308; 57 N. W. 696; 28 L. R. A. 72; 64 L. R. A. 545; 72 S. W. 232; 139 N. W. 552; 24 L. R. A. 1045; 141 Fed. 522; 39 N. W. 315; 6 Am. Rep. 140.

### STATEMENT OF FACTS.

On the morning of the 14th day of April, 1911, the day operator of the appellant company at Clayton, New Mexico, delivered two telegrams to the appellee, both purporting to be signed by the First National Bank of Monticello, Illinois, one of which directed appellee to sign the appearance bond of Charles W. Lanier, in the sum of $2,000, the said Lanier then being in the custody of the sheriff of Union County, on a criminal charge; the other directing it to pay Lanier $600. Prior to the delivery of the telegrams the said Lanier had been permitted, under the care of a guard, to go around the town and he had frequently visited the appellant's office, and was in said office the night previous. While there, on that occasion, the evidence discloses that he sent a telegram, for the agent, while he was engaged in other work which took him outside the office, reserving a Pullman berth for. some person, who had requested the agent to wire for the same; upon the return of the agent, Lanier informed him that he had made the reservation, and that he. had also taken two telegrams which came in, and hung them on the hook. There was, however, no evidence showing whether the telegrams so delivered, were the ones which Lanier said he had taken for the operator. Appellee, bank, placed to Lanier's credit the sum of $600, and caused the bond to be executed, as requested in the telegrams. The bank paid out, on checks issued by Lanier, the sum of $512.50, during banking hours on the 14th day of April. In the afternoon of said day Lanier left town. Later it was discovered that the telegrams were forgeries, and Lanier was subsequently re-arrested in Kansas, and returned to the sheriff of Union County. Ninety dollars was found on Lanier's person at the time he was

apprehended, which the bank applied to the payment of a reward which it had offered for his apprehension, the bank subsequently obtaining an order from Lanier to the sheriff to turn such money over to the bank.

The appellee filed its complaint against the appellant, for the recovery of the sum of $512.50. It is alleged that on the 14th day of April, 1911, the appellant delivered to it the following telegram:

.''Dated, Monticello, Ill. 13.
"To the Bank of Commerce, Clayton.

"Please pay Charles W. Lanier Six Hundred Dollars. We remit.

"FIRST NATIONAL BANK."

That the telegram was not delivered to the defendant company by the First National Bank of Monticello, Illinois, as said telegram purported to have been, and the complaint contained additional allegations showing that such telegram was a forged and fraudulent message. The complaint also alleged that appellee, relying upon the authenticity of such telegram, paid to said Lanier the sum of $512.50, or that it paid out upon his orders such sum. As no complaint is made as to the. statement of appellee's loss in the complaint, we will omit further reference thereto. The complaint concluded with a prayer for judgment against appellant for the sum of $512.50, together with interest thereon and costs.

Appellant answered the complaint, and by its first paragraph of answer challenged the sufficiency of the complaint, upon the ground that it failed to state a cause of action. By additional paragraphs it denied the delivery of the message, and, also alleged that appellee was guilty of contributory negligence in not having such teelgram repeated. The other allegations of the complaint were denied.

When appellee's first witness was called appellant objected to the introduction of any evidence on the ground that the complaint failed to state a cause of action, which objection was overruled by the court. Upon the conclusion of the evidence the court instructed the jury that if they returned a verdict for the plaintiff, they must credit

the defendant with the ninety dollars recovered by the plaintiff from Lanier upon his arrest against the $512.50 which the plaintiff claimed it had paid out on Lanier's checks. The jury returned a verdict for the full amount claimed, viz: $512.50. The appellant filed a motion for a new trial, based upon numerous grounds, one being that the verdict was the result of passion and bias on the part of the jury, as appeared from the fact that the jury refused to be bound by the instruction of the court with reference to the ninety dollars' credit. The court announced that it would be obliged to set aside the verdict unless the ninety dollars was remitted by the plaintiff, but, if that amount were remitted it would overrule the motion and enter judgment on the verdict. Appellee thereupon filed its written consent to a reduction of the verdict to $422.50 and the motion for a new trial was overruled, and defendant saved an exception. The court then entered judgment on the verdict and defendant appealed.

## OPINION.

ROBERTS, C. J.—The first point upon which appellant relies for a reversal is, that the complaint does not state facts sufficient to constitute a cause of action, because; (a) the addressee of a telegram cannot maintain an action against the telegraph company, for the reason that the obligation of the company springs from and depends entirely upon the contract for the transmission of the message, and this contract being solely with the sender, gives no right to the addressee, who is not a party to the contract; (b) the contract with the telegraph company, for the transmission of the message, was not for the benefit of the addressee, appellant herein; and (c) assuming that the complaint proceeds upon the theory of negligence, and that one who has suffered injury or damage because of the negligence of the telegraph company, in the premises, may maintain an action, in tort against the company, the complaint herein does not allege negligence.

The proposition stated under (a) is undoubtedly the English rule upon the subject. (Playford vs. United Kingdom Telegraph Company, L. R. 4 Q. B. 706; Dickson vs.

Rueters Telegram Company L. R. 3 C. P. 1.) While some of the American States may have followed the English rule, no case so holding has been called to our attention. The American decisions upon the question of the right of the addressee to maintain such a suit are divided into two groups. One line of cases holding that the addressee of a telegraphic message may sue the telegraph company in his own name and recover such damages as he may have sustained by reason of its negligent failure to deliver the message, or for a mistake in its transmission, when the same was intended for his benefit and the company had knowledge of the fact. This doctrine finds support in the case of Frazier vs. Western Union Telegraph Company, 45 Ore. 414; 2 Am. & Eng. Ann. Cas. 396, and some other states, reference to which will be found in the cited case.

The Majority of the states, however, hold that the addressee of a telegram, who acts upon the faith of a message negligently altered by the servants of the telegraph company in its transmission, and thereby sustains damage, may maintain an action in tort against the telegraph company. (See notes to the cases of Frazier vs. Western Union Telegraph Company, 2 Am. & Eng. Ann. Cas., 396, and Western Union Telegraph Company vs. Woodard, 13 Am. & Eng. Ann. Cas. 354.) Some of the courts hold that it is an action in tort, while other courts base the addressee's right of action upon the breach of the company's public duty. While the great majority of the cases deal with altered messages, it is obvious that the same rule would apply to forged telegrams. While it might be very interesting to consider and analyze the numerous decisions dealing with the question, it would hardly be profitable, as our own territorial court, in the case of Longwell vs. Western Union Telegraph Company, 5 N. M. 308, early committed that court to the dotrine that the addressee could maintain an action against the company for negligence in failing to promptly deliver a telegram, upon the theory that the company's employment was of a public character, and that it owed the duty of care

and good faith to both the sender and receiver. In that case, the English rule was urged upon the court, but was repudiated by it. In view of the decided conflict in the American cases, upon the theory upon which the addressee should be entitled to recover, and the fact that the opinion of the territorial court is in accord with many well considered cases, and is apparently sustained by the weight of authority, we are not inclined to depart from the rule therein announced. This rule has stood undisturbed and unquestioned for more than twenty-five years, and it is clear that it should not be lightly overturned or departed from by this court. Jones Telegraph & Telephone Companies, Sec. 478, cites the New Mexico case referred to, and many other cases from other states with approval, in support of the rule that the addressee's right of action is based upon the breach of the company's public duty. The author says:

"These companies have undertaken to perform public functions, and, among these, it is presumed that they have assumed the duty to transmit correctly and accurately and deliver promptly all messages entrusted to them; and on a failure to discharge these duties with due care and diligence, they will become liable to any one who suffers damages thereby. * * * * In other words, when they have failed to discharge their public duties in transmitting messages, whereby the addressee has been caused to suffer, the latter should have the right to maintain an action against the company for breach of its public duty. The damages, however, which result from such breach of duty should be the proximate consequence of the company's negligence."

Accepting this as the correct rule, upon which the liability of the company is based, it becomes necessary to examine the last ground of appellant's objection to the complaint, which is, that it nowhere charges negligence, and for that reason fails to state a cause of action.

Unquestionably, it is not the duty of a telegraph company to investigate and satisfy itself of the identity of the person who delivers to it a message for transmission. All that is required of it is the exercise of reasonable care in the receipt and transmission thereof.

In the absence of facts or circumstances which would suggest or arouse suspicion in the mind of a person of ordinary caution of false impersonation, or of want of authority, the exercise of reasonable care by a telegraph operator to receive messages from those only who have authority to send them, does not require him to investigate the identity or authority of those who present them, whether the messages be in writing, or are spoken directly or over the telephone, or however received. Bank of Havelock vs. Western Union Telegraph Company, 141 Fed. 522. While this is true, the rule unquestionably is, that where the plaintiff proves loss without negligence on his part, by acting on a message delivered to him by the company as coming from, but not in fact sent by one, in whose name it was signed, he makes a PRIMA FACIE case, and the duty devolves upon the company of rebutting it. Sherman & Redfield on the Law of Negligence, (6th Ed.), Sec. 539 a. Or, as stated by Jones on Telegraph & Telephone Companies, Sec. 507:

In ordinary actions brought to recover damages for personal injuries, there is probably no presumption of negligence against either party; the mere fact of injury being sustained, creates no such presumption, except where, from the peculiar circumstances involved, the familiar maxim of *res ipsa loquitur* is applicable. But where an action is brought to recover damages from a telegraph company for negligently transmitting or delaying in the delivery of a message, the rule is different. In such cases, where it is shown that a message has been delivered to it and an error has been made in its transmission; or, that a delay has been made in its delivery; or that it has been transmitted but not delivered; or, that it has not been transmitted; or, that a material word has been omitted in the message, it is presumed that the company has been guilty of negligence, and the burden is on the latter to disprove such negligence. This is the universal rule; and when the plaintiff has shown a delivery to the company and that an error has been made, or that the message has been delayed in its delivery, his case is made out. The

reason of the rule is obvious.  If the burden were cast upon the plaintiff, he could never make out his case.  It. would be nothing more nor less than a fight in the dark to impose such a duty upon him, since the proof of these negligent acts are almost always in the sole possession of the defendant company.  Being peculiarly within the knowledge of the company, it is no hardship on them to be required to furnish the proof of the causes of errors, or delays."

In this case, as in all similar cases of forgery, erroneous transmission and other errors occurring, the facts were wholly within the knowledge and keeping of the company. The addressee ordinarily would have no means of knowing how the forged message was injected into the company's lines, or from whence it came, or the facts or circumstances attending its receipt and delivery. All that he knows, or could be expected to know is that the forged message was placed in his hands by an agent of the company.  For this reason it would be illogical to require him to offer, in the first instance, evidence of negligence. All that he is required to prove, is the delivery to him of the forged telegram, his reliance thereon and resulting damage.  When he has done this, the law presumes negligence, in the absence of a showing of freedom therefrom by the company.  If the plaintiff proves such facts, and the defendant offers no evidence, he is entitled to recover, by the aid of this presumption.  This being true, the question arises as to whether the complaint before us, is so fatally defective that it will not support the verdict; not whether a demurrer thereto, on the grounds here presented should have been sustained by the trial court, for the complaint. was not properly challenged by demurrer. It is true, defendant interposed a demurrer, in conjunction with its answer, but the rule is that where a party attempts to demur and plead to the merits at the same time and to the same pleading, he waives the demurrer, or, as stated in 6 Ency. Pl. & Pr. 384:

"It is the rule in such cases that the demurrer is pre-

sumed to be overruled or waived by the plea and is put out of the case." Or, as the rule is stated by the Supreme Court of Indiana, in Hoosier vs. Eliason, 14 Ind. 523:

"A party cannot demur and answer to the merits at the same time to the same paragraph. Hence, when this is attempted, either the demurrer or answer must give way. The rule is, in such case, that the answer overrules the demurrer and puts it out of the case."

Nor did appellant's objection to the introduction of any evidence on the ground that the complaint failed to state facts sufficient to constitute a cause of action, present the question properly to the trial court for its judgment. An objection to the reception of any evidence, on the ground that the complaint fails to state facts sufficient to constitute a cause of action should definitely point out wherein the complaint so fails, in order to enable the court to intelligently rule upon the question, and to show the opposite party the point of the objection. The present case affords an excellent illustration of the reason for the rule. The appellant, prior to its answer, filed a motion to make the complaint more definite and certain, which proceeded upon the theory that appellee was suing on contract, under the "Oregon Rule," heretofore discussed, and upon the assumption that only under such a theory of the law could the plaintiff recover. The court properly concluded that the action was in tort and overruled the motion. Naturally, when appellant interposed the objection, without specifying the particulars wherein the complaint failed to state a cause of action, the trial court assumed that appellant's objection was based upon the theory that an action in tort would not lie, and that appellee's remedy was on the contract, or as beneficiary thereunder. Had appellant, either in its demurrer or objection to the reception of any evidence, pointed out the fact that no specific allegation of negligence was contained in the complaint, the defect would doubtless have been promptly corrected. The evidence before the jury made out a prima facie case of negligence, which the appellant did not attempt to rebut. It relied

solely upon the defense of contributory negligence, and attempted to show that the bank did not use due care in acting and relying upon an unrepeated, open message. The court charged the jury fully upon the question of negligence, as applied to the facts, and appellant, as shown by its requested instructions, recognized that the complaint proceeded upon that theory. After thus litigating the question, upon the theory of negligence, it endeavors to defeat the plaintiff in this court upon the technical ground that its complaint failed to affirmatively charge it with negligence in the delivery of the forged message. Had it attacked the complaint directly upon this ground in the trial court it doubtless would have driven the complainant to an amendment there or a reversal here, although some authorities may be found which hold such a complaint not demurable. (Chicago, Rock Island & Pacific Ry. Co. vs. Young, Admr., 58 Neb. 678; Bishop vs. Middleton, 43 Neb. 10.) As negligence of the company is the ultimate fact upon which the plaintiff must rely for a recovery in an action against a telegraph company for delay in delivery, errors in transmission, and the delivery of forged telegrams, it is clear that good pleading requires that such fact should be alleged directly, and it might be, that a pleading alleging negligence only inferentially would be subject to attack, upon demurrer in the trial court. Conceding this, however, it does not follow that the complaint will not support the judgment on appeal, for, where a complaint is first attacked in the appellate court, upon the ground that it does not state facts sufficient to constitute a cause of action, it will be liberally construed in order to uphold the judgment, and, if it contain allegations from which every fact necessary to maintain the action may be inferred, it will be sustained. Daniel vs. Holland, 4 Ky. 19; Murphy vs. Ins. Co., 70 Mo. App. 78; Malone vs. Fidelity & Casualty Co., 71 Mo. App. 1; Lake Erie & Western Railway Co. vs. Lee et al., 14 Ind. App. 328; Gustin vs. Concordia Fire Ins. Co., 164 Mo. 172; 2 Tidd's Practice, 919. In the present case the complaint alleged the delivery to the

plaintiff, by the agent of the defendant, of the forged tele-
gram. This was all it was required to prove on the trial
of the case to make out a prima facie case of negligence.
This fact being established, negligence was to be presumed,.
in the absence of a contrary showing by the defendant.
While slight evidence might have been sufficient to over-
come the prima facie case, nevertheless the facts stated,
if proven on the trial, would establish, unless rebutted,.
plaintiff's right to recover. This being true, we think
the inference of negligence could be fairly drawn from
such allegation in a complaint, in support of the verdict
and judgment, where the complaint is attacked for the
first time in this court. It may be contended, however,
that this is simply a presumption of evidence. In the
case of Irwin vs. Shaffer, 9 Ohio St. 43, 72 Am. Dec. 613,
the court said:

"It is said, however, that these are presumptions of
evidence merely, and not presumptions in pleading. Be-
this as it may under the system of pleading at common
law, we think that under the code of civil procedure, and
after verdict or a finding by the court of all the issues
in the case in favor of the plaintiff, a petition stating
facts, which if proved on the trial, would constitute a good
prima facie case for the plaintiff, must be held good on
error."

In this case, as stated, it clearly appears that the par-
ties understood they were litigating the question of negli-
gence. That appellant was negligent is clearly established
by the verdict of the jury, for, under the instructions of
the court, unless they found negligence on its part, they
would have returned a verdict in its favor. No good
reason has been shown for a reversal of the case on this
point. Should it be sent back for a retrial, the plaintiff
would of course amend its complaint and the parties
would relitigate a question already tried and passed upon
by a jury, upon the same evidence presented to the first
jury. In the case of Wilson vs. Hunt's Adm'r., 6 B. M.
(Ky.) 379, it was said:

"When the verdict can be fairly considered as estab-

lishing between the parties the very fact which should have been but is not precisely averred in the declaration and especially when it clearly appears that that fact was understood by the parties to be the point in issue to be decided by the jury, it would be unnecessary for the ends of justice, and would be worse than useless, to remand the case that it should again be presented for the decision of the jury."

While a defendant may raise the question of the suficiency of the facts stated in the complaint to constitute a cause of action for the first time in the appellate court, the code has little toleration for the practice of concealing questions from the lower courts with a view of making them available upon vexatious appeals; and it is, therefore, necessary to the harmony of our practice as a whole, as well as to the fair and speedy administration of justice, that the most liberal form of the common law doctrine of amendment after verdict shall be fully maintained. Evansville & Terre Haute R. R. Co. vs. Willis, 80 Ind. 225.

Applying the foregoing rules and principles to the complaint in this case, we hold that it states sufficient facts to support the verdict.

The second alleged error discussed, was the refusal of the trial court to grant appellant a continuance. The ground of the application was that it had arranged with the witness, who resided at Anadarka, Oklahoma, to attend the trial as a witness in its behalf; that shortly before the trial the witness removed to Florida, and that it had telegraphed him to come, but had been advised that it was impossible for him to be present at that term of court. The continuance of a cause upon application rests in the discretion of the trial court and will not be interfered with upon appeal unless it appears that the trial court has abused such discretion. Terr. vs. Watson, 12 N. M. 419. In a civil case, where a witness resides beyond the jurisdiction of the court in which such cause is pending, a party has no right to rely upon the promise of such witness to attend the trial, but should

take his deposition. Yori vs. Cohn, 26 Nev. 206, 67 Pac. 212, 9 Cyc. 120. It follows that there was no abuse of discretion in refusing the continuance.

It is next urged that the trial court should have sustained appellant's motion for a non-suit at the conclusion of appellee's case, for the reason that it had failed to prove negligence; this upon the theory that it was incumbent upon the plaintiff to offer affirmative proof of negligence. The court properly denied the motion. Under the rule herein announced it was only necessary for the plaintiff to make out a prima facie case of negligence, and this it did by establishing the delivery to it by appellant of the forged telegram. To hold that it is incumbent upon a plaintiff, in such a case, to affirmatively establish the facts showing negligence, would prevent a recovery in practically every case. The facts are peculiarly within the knowledge of the company, and it is only just that it should be required to establish the same upon the trial and show its freedom from negligence. With its many thousands of offices, in all parts of the country, it would be absolutely impossible for a party, who received such a forged telegram, to ascertain the place of its origin, or the facts attending its receipt for transmission by the company. For this reason the rule has been established by the courts that it is only necessary for the injured party to show the receipt of the forged instrument, and its delivery by the company, to warrant a recovery, upon proof of damage, in the absence of any showing by the company of freedom from negligence. The court properly denied the motion.

On the trial of the case below appellant offered H. J. Hammond, president of the First National Bank of Clayton, as a witness, who testified that it was a custom, uniformly observed by all banks, not to pay out money on an "open" telegram, without confirmation. During his direct examination he testified: "I always place the limit at $50.00 or below," meaning that he, in his banking practice, never paid out more than that sum on an "open" telegram. In rebuttal, the appellee offered T. H. Rixey

as a witness.   He testified that for several years he had acted as cashier of the First National Bank, of which H. J. Hammond was president, and that it was the custom of the bank to pay out money on "open" telegrams, and that such custom had always been followed, up to the time of the particular case of the appellee bank paying out money on "this open telegram," meaning the telegram in question in this case.  To this evidence the appellant objected, on the ground that it went to the custom of a particular bank.  The evidence was admitted by the court, probably on the theory that it went to rebut the testimony of Mr. Hammond that he never paid out sums exceeding $50.00 on open telegrams, which probably was incompetent, but having been offered by the appellant, it can not complain because the court permitted it to be rebutted. Wigmore on Evidence, Vol. 1, Sec. 15.

Appellant assigns error, upon the action of the court sustaining the motion of appellee to strike out a portion of the agreed statement of facts to which one G. G. Granville, would testify, were he present as a witness.  Appellant failed to preserve the error, however, if such intervened, as it did not set out the same in its motion for a new trial.   The rule is well established in this jurisdiction, that no alleged errors, unless they are jurisdictional, will be considered on appeal or error, except those which are set out in the motion for a new trial. U. S. vs. Cook, 15 N. M. 124.

Error is predicated upon certain instructions given by the court.  The court instructed the jury upon the theory of the law, which we have discussed and approved in this opinion, which of course is at variance with appellant's views.  Having fully stated our conclusions, which accord with the instructions given, further consideration is unnecessary.

The only remaining question, which need be considered, is, that the verdict was the result of passion and prejudice.  To support this claim, appellant relies upon the fact that the verdict was returned by the jury for $512.50, when under the instructions of the court a verdict in ex-

cess of $422.50 could not have been returned. The trial court, however, required the appellee to file a remittitur of $90.00, and the judgment as entered was only for $422.50, which is amply sustained by the evidence.

Where a plaintiff enters a remittimur as to a part of his recovery in the lower court, and there is sufficient **13** evidence to sustain the balance of his recovery, and such balance is approved by the trial court, a judgment for such balance will not be disturbed, unless it is apparent to the reviewing court, from the flagrant excessiveness of the verdict, that the jury was influenced by prejudice or passion. 3 Cyc. 382. The verdict rendered was not so flagrantly excessive, as to compel the conclusion that it was rendered as a result of passion or prejudice.

Finding no available error in the record, the judgment of the trial court will be affirmed, and, it is so ordered.